## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JENNIFER VIGIL,

                    Plaintiff,

vs.                                                        No.: CV-2002-1241 JB/WDS

GOVERNING BOARD OF THE
ALBUQUERQUE TECHNICAL
VOCATIONAL INSTITUTE,

                    Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** comes before the Court on Plaintiff's Proposed Findings of Fact and Conclusions of Law, filed December 30, 2003 (Doc. 44), Defendant's Proposed Findings of Fact and Conclusions of Law, filed December 31, 2003 (Doc. 45), and Plaintiff's Proposed First Amended Findings of Fact and Conclusions of Law.  The Court held a bench trial on January 5-6, 2004.  After hearing witness testimony and considering all of the evidence presented in this matter, the Court makes the following Findings of Fact and Conclusions of Law:

**I.     THE PARTIES, THROUGH COUNSEL, HAVE STIPULATED TO THE FOLLOWING FACTS:**

1.     Plaintiff, Jennifer Vigil ("Vigil"), is a resident of Albuquerque, Bernalillo County, New Mexico.[1]

2.     Vigil and John Crawford are currently employed at TVI as supervisors in the TVI Security Department, a position entitled "Security Officer III."

---

[1] With the exception of renumbering and changing minor typographical errors, the Court has left the parties' stipulated facts unchanged.

3.      TVI is a state institution of higher education having its principal place of business in the State of New Mexico and the City of Albuquerque and TVI Governing Board is a corporate body subject to suit.

4.      TVI has at least fifteen employees as defined by Title VII of the Civil Rights Act. (42 U.S.C. §2000(e) *et seq*. as amended).

5.      The acts which give rise to the Complaint were committed in Albuquerque, New Mexico and are within the jurisdiction and venue of this Court.

6.      Vigil files the above-captioned action under Section 16(c) of the Fair Labor Standards Act, 29 U.S.C. §216(c) and 217 and §2000(e) of Title VII, alleging that the Defendant TVI discriminated against Vigil, in the setting of her wages, terms, conditions and privileges of her employment on the basis of her gender (female).

7.      Vigil contends that Defendant TVI discriminated against her on the basis of her gender in the setting of her wages in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and in violation of an implied contract of employment.

8.      Defendant TVI contends that at all times relevant to Vigil's complaint it acted in a non-discriminatory manner and acted in good faith.

9.      TVI prohibits discrimination based on gender and has in place numerous policies and procedures to prevent unlawful gender discrimination.  Defendant TVI also has in place procedures for employees to complain about alleged discrimination.

10.     Defendant TVI contends that it does not illegally discriminate on the basis of gender, race, color, national origin, religion, age, disability, sexual orientation or marital status in any of its policies, practices or procedures in accordance with applicable federal, state and local laws, nor will it condone any act of illegal discrimination or harassment on the part of its employees and this anti-discrimination

provision includes, but is not limited to, employment, admissions, testing, financial aid and educational services.

11.     The Application forms and Job Vacancy Announcements at issue in this case contain language to the effect that Albuquerque TVI does not discriminate on the basis of gender on any of its policies, practices, procedures and employment.

12.     Vigil began working for Defendant TVI in January of 1998 as a Security Aide under a work/study program and became a full time Security Officer I for TVI in 1999.  She is currently employed by TVI as a Security Officer III; a supervisory position.

13.     On or about July 18, 2000, Vigil completed the training necessary for certification as an Emergency Medical Technician.

14.     In August or September 2000, Vigil, who was then employed as a Security Officer I applied for a promotion to an open, vacant position as Security Officer III.  The promotion was given to a male co-worker, Joe Candelaria.

15.     In July of 2001 another promotional opportunity to Security Officer III was posted and Vigil applied for the position.

16.     The minimum requirements set forth in Defendant TVI's Job Posting for Security Officer III at the time of Vigil's and John Crawford's promotion were the completion of a post-secondary security-training course, three (3) years, or an equivalent combination of education and experience.

17.     Vigil met the minimum qualifications for the Security Officer III positions posted in June 2001.

18.     The parties agree that at the time Vigil applied for promotion to Security Officer III in June of 2001, she had completed 114 post secondary credit hours and held an Associate of Arts degree.

19.     Vigil contends that she is entitled to more post secondary credit hours, up to 130.

20.     As of the date of her promotion to Security Officer III on July 17, 2001, TVI considered Vigil to have been working for Defendant TVI for 2½ years and thus she was given 2.5 years of credit for experience.  The reason that her total experience was reduced to 2½ years is because TVI gave her four months of employment credit for the eight months she worked in the work/study program because during that time she worked what TVI considered to be "essentially half time."

21.     She was given that promotion effective July 17, 2001.  However, her pay after promotion was at the bottom of the pay scale, $11.13.

22.     Immediately prior to her promotion to Security Officer III, Vigil's base hourly wage was $9.89 per hour and her wage upon promotion was based on that wage.

23.     Prior to June 17, 2001, Vigil's base rate of pay was $9.89 per hour plus $0.84 per hour for a combined hourly wage rate of $10.73 per hour.

24.     After her promotion on June 17, 2001, Vigil's rate of pay was increased to $11.13 per hour.

25.     Vigil was promoted to Security Officer III in July 2001 and TVI set Vigil's new salary level consistent with TVI Wage policy § 5.02(C)(2)(a), which states that at promotion an employee's rate of pay will increase by the higher of the minimum rate of pay for the new position, or an amount equal to a 5% increase over the previous rate of pay.

26.     The method used to determine Vigil's wage upon promotion was that found in Defendant TVI's Section V Wage and Salary Policies, Rule 5.02(C)(2), and because the beginning level of the Security Officer III wage scale represented an increase of at least 5%, over her base wage her wage upon promotion was set at the beginning level, $11.13 per hour.

27.     Vigil's pay was set at the minimum starting wage for Security Officer III and that amount was more than a 5% increase over her previous base pay.

28.     Ron Hollie was promoted to Security Officer III at the same time as Vigil and his wage was also initially set at the minimum of $11.13 an hour.

29.     Following Vigil's promotion, another male, John Crawford, was promoted to Security Officer III on or about September 2001.

30.     John Crawford was promoted to Security Officer III in January of 2002 and Defendant TVI contends that it applied the "years of experience over the minimum" calculation of §5.02(B)(2)  to arrive at a promotion wage figure for John Crawford.

31.     At the time of his promotion to Security Officer III John Crawford had 39 credit hours of post-secondary education.

32.     Mr. Crawford was given 1 ½ years credit for 39 credit hours of post-secondary education and 1 year of credit for EMT certification for a total of  2 ½ years credit for education and Defendant TVI contends that the 2 ½ years credit for education was applied towards the minimum requirement of three years of education and experience that the Security Officer III position required.

33.     John Crawford had nine years of experience in security, which included over four years of supervisory experience in other jobs and Defendant TVI contends that he was given credit for nine years of related work experience at the time of his promotion to Security Officer III.

34.     Defendant TVI set Crawford's wage above the beginning point on the wage scale for Security Officer III, at $13.02 per hour.

35.     Immediately prior to his promotion John Crawford's base hourly wage was $10.72 per hour and his wage upon promotion was based on that wage.

36.     The wage rate set for John Crawford was reviewed and approved by Sadie Tafoya, Vice President of Administrative Services for TVI.

37.     Vigil complained about alleged differences in pay to Defendant TVI and Vigil was informed that Defendant TVI would look at the problem and attempt to make a correction.

38.     On or about March 7, 2002 Vigil asked Dave Casalino, then Interim Director of Security to look into why her wage upon promotion was set at the minimum on the scale while that of John Crawford was set above the minimum.

39.     The work performed by Vigil, John Crawford and Joe Candelaria is substantially similar.

40.     In March 2002, Dave Casalino, requested Susan Crawford to compare the pay rates of three individuals recently promoted to Security Officer III.

41.     Susan Crawford responded to Mr. Casalino's request in a memorandum dated March 20, 2002.

42.     The reasons for the wage differences set forth in Susan Crawford's memo were explained to Vigil by Susan Crawford herself and by Dave Casalino.

43.     Vigil filed a charge with the Equal Employment Opportunity Commission on March 28, 2002 alleging in part that TVI discriminated against her in setting wages.

44.     On June 18, 2002, Vigil received her Right to Sue letter from the EEOC and filed the instant action within 90 days thereafter.

45.     About the same time that Vigil received her right to sue letter from the EEOC on June 20, 2002, Defendant TVI recalculated Vigil's wage and made an adjustment to that wage, retroactive to her promotion, increasing her hourly wage to $11.69.

46.     As a result of Vigil's complaint and Defendant TVI's investigation, Vigil's pay was adjusted from $11.13 to $11.69 an hour and she was paid back pay in June of 2002.

47.     In June of 2002, TVI adjusted her hourly wage rate to $11.69 per hour and paid her back wages of $1,208.06 representing the difference in her prior wage of $11.13 per hour and her adjusted wage of $11.69.

48.     Defendant TVI calculated the adjustment to Vigil's wage by applying TVI policy 5.02(B) giving her credit for her EMT training and for her Associate of Arts degree.

49.     On June 5, 2002, TVI adjusted Vigil's hourly wage to credit her for experience and education.

50.     At the time John Crawford's wage was set by TVI at the time of his promotion, he was given

one year's education credit for his EMT training.  At the time of her wage adjustment in May of 2002, Vigil who also holds certification as an EMT was also given one year's education credit for her EMT certification.

51.     Ron Hollie's promotion wages for Security Officer III were also recalculated at the same time as Vigil's and he received a raise and back pay.

52.     Defendant TVI did not apply the provisions of Section 5.02(B)(2)(a) to its calculation of Vigil's wage at the time she was promoted to Security Officer III.  Defendant TVI contends that this provision was used in the recalculation of Vigil's wage in June of 2002.

53.     Vigil contends the manner and method used by the Defendant to determine Crawford's and Candelaria's wage upon promotion was different than that used to determine Vigil's wage. Specifically, upon promotion, Candelaria's and Crawford's wages were set by application of Rule 5.02(B) whereas Vigil's was set by application of TVI policy 5.02(C) with the result that the two males upon promotion received a more generous pay raise than the female Vigil.   Defendant TVI disputes this contention.

54.     Vigil contends that although the adjustment to her wage purported to follow the provisions of Section 5.02(B), the method of calculation used by TVI continued to favor the male Security Officers III and disfavor Vigil in that Vigil was only given credit for the number of credit hours necessary to obtain her Associate of Arts degree and did not count credit hours beyond that, whereas in counting Crawford's credit hours, who did not hold any type of degree, all credit hours were counted.  Defendant TVI does not agree.

55.     At the time of her wage adjustment in June of 2002, Vigil held an Associate of Arts Degree but also had credit hours beyond the minimum necessary to earn the degree.

56.     In adjusting her wage to comport with the method used to calculate John Crawford's wage, TVI credited her with only 2 years of  "educational experience" based on her A.A. degree.

57.     As part of the recalculation, Vigil was given credit for 2.5 years of directly comparable experience over the minimum.

58.     Although Vigil called to Defendant TVI's attention that the wage adjustment was not properly calculated, Defendant TVI refused to make any further adjustments.

59.     Defendant TVI contends that it made good faith efforts to comply with Title VII and the Equal Pay Act.

60.     Defendant TVI contends that it substantially followed all of its gender neutral policies and procedures with respect to the calculation of Vigil's pay upon her promotion to Security Officer III and Defendant TVI interpreted its wage policies in favor of Vigil and exercised care in an effort to avoid harm to Vigil by acting upon her complaint and reviewing and recalculating Vigil's wages on the same basis as utilized for John Crawford, which contention Vigil disputes.

61.     TVI has adopted policies and procedures embodied in an employee handbook. The version of those policies applicable to this case is that updated March 2002.

62.     TVI's Employee Handbook is only in effect when it has been approved by the Governing Board by appropriate resolution.   TVI's Board reserves the right to make such changes or amendments to the TVI Employee Handbook as in the Board's opinion are necessary or desirable for the effective operation of the Institute.

63.     Any changes and amendments to the TVI Employee Handbook are effective upon approval of the Governing Board regardless of whether or not Vigil receives notice.

64.     TVI's Employee Handbook does not provide for compensatory damages, emotional distress damages, or attorney's fees for Vigil based upon an alleged breach of implied contract.

65.     In addition to the Employee Handbook TVI has promulgated an Administrative Directive regarding Section 5.02 of the Employee Handbook which directive is applicable to this case.

66.     Defendant TVI contends that its conduct in this matter was not malicious, fraudulent, oppressive, or reckless with a wanton disregard for Vigil's rights, and, therefore Vigil is not entitled to an award of punitive damages.

## II.     THE COURT MAKES THE FOLLOWING INDEPENDENT FINDINGS OF FACT.

67.     All Job Announcements promulgated by TVI and relied upon by Vigil, whether for Security Officer I or Security Officer III positions, contained a statement that "TVI IS AN EQUAL OPPORTUNITY EMPLOYER."

68.     TVI's investigation of Vigil's complaint brought to light that TVI used different methodologies to set Vigil's and Crawford's wages.

69.     The difference in methodology used to calculate Vigil's and Crawford's wages was not based on Vigil's gender.

70.     TVI did not take into consideration that Vigil is a female in determining her promotion pay or Crawford's promotion pay.

71.     To establish Crawford's wage promotion, TVI applied the provision of § 5.02(B)(2)(a), giving him an additional 2 percent of the minimum pay for Security Officer III for each year of comparable prior experience.

72.     If TVI had used § 5.02(C) to calculate Crawford's pay after promotion, he would have suffered a decrease in pay.

73.     Although § 5.02(B) does not specifically address promotional pay increases, TVI made the decision to apply §5.02(B) to calculate Crawford's wages because his circumstances were unique.

74.     Before the time TVI promoted Crawford, TVI's practice had been to use §5.02(B), in its discretion, to promotional pay increase in addition to new hires.

75.     In calculating Vigil's wages and Crawford's wages after promotion to Security Officer III, TVI first subtracted the $0.84 Emergency Medical Technician differential to determine the base rate of pay before performing additional calculations.

76.     TVI subtracted the EMT differential because Security Officer III personnel are not entitled to receive the differential.

77.     Based on its findings, TVI believed it was appropriate to recalculate Vigil's rate of pay according to the same methodology it had used to calculate Crawford's promotion pay.

78.     TVI adjusted Vigil's wages retroactively and paid back wages in June of 2002; however, Vigil continued to receive a lower wage than Crawford because Crawford had more experience than Vigil at the time of promotion to Security Supervisor III.

79.     Vigil was given two years of credit for her associate's degree which was listed as her post-secondary education in her application for the Security Officer III position and one year of credit for her EMT certification like Crawford, for a total of three years credit for education toward the minimum requirement of three years of education and experience that the position required.

80.     At the time of her promotion, Vigil had approximately 2 ½  years of experience in the TVI Security Department, and as it had done with Crawford, TVI gave Vigil was given credit for 2.5 years of directly comparable experience under § 5.02(B).

81.     While employed in the work-study program, Vigil usually worked a shift that ran from 5:00 p.m. to 10:00 p.m. for a total of five hours per day, four days per week.  During semester breaks and holidays, however, Vigil began her shift earlier and sometimes worked more than four days per week. At least one month of the eight she worked under the work-study program, she worked approximately 40 hours per week.

82.     To meet the minimum requirements of three years combined education and experience for the Security Officer III position, TVI applied half of a year of Crawford's experience to the minimum requirements, reducing his experience to 8.5 years of experience over the minimum required.  This resulted in Crawford receiving a higher promotion wage than Vigil.

83.     Even if TVI had counted all of Vigil's educational credit hours individually rather than only giving her credit for her two year degree, her wage readjustment would have been the same because education is not considered "comparable prior experience" for the purpose of setting wages.

84.     Vigil does not have comparable or superior experience in the security field than Crawford, and Vigil's qualifications were not equal to or greater than those of Crawford.

85.     Vigil and Crawford are not similarly situated because Crawford has more experience than Vigil.

86.     TVI does not apply any education beyond the three year minimum required in setting wages.

87.     After her initial hire, TVI scheduled Vigil to work more hours than her male counterparts.

88.     Vigil was present when male co-workers made sexually suggestive comments about other women.

89.     Vigil did not establish that such comments were made by persons directly involved in setting her wages.

## III.     THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW.

**With respect to Vigil's claims under Title VII of the Civil Rights Act of 1964, the Court finds that:**

A.     This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5.

B.     Vigil did not prove that an intent to discrimination against her based on her gender was the determining factor in calculating her wages upon promotion to Security Officer III and in calculating Crawford's wages upon promotion to Security Officer III.

C.     Vigil has not proved that similarly situated males received a higher salary than her because she was not similarly situated to Crawford.  Crawford has more experience.

D.     Vigil did not prove that her gender was a motivating factor in TVI's decision not to pay her the same wages as Crawford.

E.      TVI provided legitimate, nondiscriminatory reasons for the difference in wages between Vigil and Crawford.

F.      TVI acted in good faith to comply with Title VII, and TVI would have made the same decision regardless of Vigil's gender.

G.      Vigil did not prove that TVI's reasons for setting Vigil's wages lower than those of Crawford were a pretext for discrimination.

H.      Vigil did not prove that she is entitled to damages as authorized under Title VII of the Civil Rights Act of 1964.

I.      Vigil is not entitled to punitive damages as she failed to present evidence that TVI engaged in intentional discrimination with malice or reckless indifference to her rights under Title VII and because TVI has made good faith efforts to comply with Title VII.

J.      Vigil failed to establish that she is entitled to reasonable attorney's fees and court costs.

**With respect to Vigil's claims under the Equal Pay Act, the Court finds that:**

K.      This Court has jurisdiction pursuant to 29 U.S.C. § 216(b).

L.      TVI paid Vigil less than Crawford because Crawford had more years of experience than Vigil; the difference in wages based on experience is a factor other than sex.

M.      Vigil is not entitled to damages under the Equal Pay Act.

N.      Vigil is not entitled to liquidated damages under the Equal Pay Act because TVI's conduct with respect to the setting of Vigil's promotion wages was not wilful, TVI did not know its actions were in violation of the Equal Pay Act, and TVI did not act with reckless disregard of the Equal Pay Act.

O.      Vigil is not entitled to her reasonable attorney's fees and costs under the Equal Pay Act.

**With respect to Vigil's claims under a state law contract theory, the Court finds that:**

P.      Vigil did not prove that she had an express contract with Defendant TVI to govern the setting of her wages upon promotion to Security Officer III and therefore she is not entitled to any damages for breach of an express contract with TVI.

Q.      Assuming, without deciding, that an implied contract of employment existed as set forth in Plaintiff's Ex. 2 at the time of her promotion, Vigil has not proved that TVI breached any implied contract with Vigil to provide an equitable and consistent basis for paying non-instructional employees when it adjusted her wages after promotion to Security Officer III.  If the covenant of good faith exists in an implied contract case, Vigil failed to establish that TVI breached any duty to Vigil pursuant to the covenant of good faith and fair dealing.

R.      Vigil is not entitled to any compensatory damages for breach under any implied contract for employment with TVI.

S.      Vigil is not entitled to any damages for attorney's fees under any implied contract for employment with TVI.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Thomas J. Griego
Bill Gordon & Associates
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Henry F. Narvaez
Raul P. Sedillo
Narvaez Law Firm, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*